UNITED STATES DISTRICT COURT
NORTHERN DISTRICT NEW YORK
_____

STATE FARM INS. CO.,
                     Plaintiff,

v.                                         5:06-CV-1473
                                       (GTS/GJD)
TRAVELERS INDEM. CO.; ST. PAUL TRAVELERS;
HERTZ CORP.; HERTZ VEHICLES, LLC;
GEICO GEN. INS. CO.; SEAN GOODEVE;
ERICA LOVETTE; and LEONARD J. MYLES;
                     Defendants.[1]
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICE OF JAMES F. GAUL<br>  Counsel for Plaintiff | JAMES F. GAUL, ESC. |
| KENNEY SHELTON LIPTAK NOWAK LLP<br>  Counsel for the Travelers Defendants | JUDITH T. SHELTON, ESQ. |
| GOLDBERG SEGALLA LLP<br>  Counsel for the Hertz Defendants | DAVID E. LEACH, ESQ. |
| MELVIN & MELVIN LAW, PLLC<br>  Counsel for Defendant Geico | RONALD S. CARR, ESQ. |
| LYNN LAW FIRM, LLP<br>  Counsel for Defendant Sean Goodeve | THOMAS F. SHANNON, ESQ.<br>PATRICIA A. LYNN-FORD |
| SMITH, SOVIK, KENDRICK & SUGNET, P.C.<br>  Counsel for Erica Lovette | KRISTEN M. BENSON, ESQ. |
| LAW OFFICE OF JOSEPH P. GORGONI<br>  Counsel for Leonard J. Myles | JOSEPH P. GORGONI, ESQ. |

HON. GLENN. T. SUDDABY, United States District Judge

---

      [1]      For the sake of brevity, the Court has omitted from the caption the numerous cross claims and counter claims asserted in this action.

**MEMORANDUM DECISION AND ORDER**

The above-captioned action is an insurance-coverage dispute arising out of personal injuries sustained by a Syracuse police officer when he was struck and dragged by a vehicle driven by a suspect attempting to flee the scene of arrest. The action was brought by State Farm Insurance Company ("Plaintiff") against Travelers Indemnity Company and St. Paul Travelers ("Travelers Defendants"), Hertz Corporation and Hertz Vehicles LLP ("Hertz Defendants"), Geico General Insurance Company ("Defendant Geico"), Sean Goodeve ("Defendant Goodeve"), Erica Lovette ("Defendant Lovette"), and Leonard J. Myles ("Defendant Myles").

Currently before the Court are the following four motions: (1) the Travelers Defendants' motion for summary judgment (Dkt. Nos. 34-35); (2) Defendant Geico's motion for summary judgment (Dkt. No. 39); (3) the Hertz Defendants' motion for summary judgment (Dkt. No. 40); and (4) Plaintiff's motion for summary judgment (Dkt. No. 56). For the reasons set forth below, the Travelers Defendants' motion for summary judgment is denied; Defendant Geico's motion for summary judgment is granted; the Hertz Defendants' motion for summary judgment is granted; and Plaintiff's motion for summary judgment is denied.

**I.   RELEVANT BACKGROUND**

**A.   Parties' Claims in this Action**

On October 27, 2006, Plaintiff filed this action seeking a judgment declaring the obligations of several insurance companies regarding the personal injuries sustained by Syracuse Police Officer Defendant Goodeve in the course of his employment. (*See generally* Dkt. Nos. 1, 24 [Compl. and Am. Compl.].) More specifically, Plaintiff alleges that Defendant Goodeve's injuries were sustained on February 12, 2005, when a suspect whom he was about to arrest,

Defendant Myles, placed his vehicle in reverse and accelerated in an attempt to flee the scene, striking and/or dragging Defendant Goodeve.  (*See generally* Dkt. No. 24 [Am. Compl.].)  Plaintiff further alleges that the incident is not covered by the uninsured motorists coverage provision of Defendant Goodeve's policy with Plaintiff because that provision covers only accidents, and the incident was caused not by an accident but by an intentional act.  (*Id*.)

In addition to bringing the action against Defendants Goodeve and Myles, Plaintiff brings the action against the following persons or entities: Defendant Myles' girlfriend, Defendant Lovette, who rented the vehicle in question from Hertz before the incident; the Hertz Defendants, which insured the rental vehicle in question, and which denied coverage of the incident in question; the Travelers Defendants, which insured Defendant Myles' personal vehicle, and which denied coverage of the incident in question; and Defendant Geico, which insured Defendant Lovette's personal vehicle, and which denied coverage of the incident in question.  (*Id*.)

Defendants have asserted numerous cross claims and counter claims against each other and Plaintiff.  (*See* Dkt. Nos. 28, 29, 30, 32, 33.)  Familiarity with the parties' cross claims and counter claims, as well as the factual allegations supporting each of the claims in this action, is assumed in this Decision and Order, which is intended primarily for review by the parties.

      **B.**     **Related Proceedings in State Court**

On or about October 17, 2006, Leonard Myles plead guilty, before Judge Anthony F. Aloi in Onondaga County Court, to an intentional assault of Officer Goodeve.  *See People v. Myles*, Indictment No. 2006-0691-1, Index No. 06-0808, Transcript of Proceeding on 10/17/06 (Onondaga County Ct.).

On or about June 7, 2007, Officer Goodeve and his wife filed an action against Hertz, Erica Lovette and Leonard Myles in New York State Supreme Court, Onondaga County, to recover for Officer Goodeve's personal injuries. *See Goodeve v. Hertz Corp.*, Index No. 2007-3458, RJI No. 33-08-2503, Complaint (N.Y.S. Sup. Ct., Onondaga County). Generally, in that action, the Goodeves alleged that Hertz and Lovette were vicariously liable for Myles' negligent actions. *See Goodeve v. Hertz Corp.*, Index No. 2007-3458, RJI No. 33-08-2503, Decision at 2 (N.Y.S. Sup. Ct., Onondaga County, filed March 11, 2009) (Murphy, J.S.C.).

C.     **Parties' Current Motions**

On December 31, 2007, the Travelers Defendants moved for summary judgment essentially on the ground that Defendant Myles' use of the rental vehicle was not covered by their insurance policy with him regarding his personal vehicle under the circumstances. (Dkt. Nos. 34-35.) More specifically, the Travelers Defendants assert two alternative arguments in support of their motion: (1) the incident is not covered by Defendant Myles' insurance policy with the Travelers Defendants because the relevant provision of the policy covers only accidents, and the incident was caused not by an accident but by an intentional act; and (2) Defendant Myles failed, as a matter of law, to provide the Travelers Defendants with timely notice of the incident, the loss, and the claim. (*Id.*)

On January 11, 2008, Defendant Geico moved for summary judgment essentially on the ground that Defendant Myles' use of the rental vehicle was not covered by Defendant Geico's insurance policy with Defendant Lovette regarding her personal vehicle under the circumstances. (Dkt. No. 39.) More specifically, Defendant Geico asserts four alternative arguments in support of its motion: (1) the incident is not covered by Defendant Lovette's insurance policy with

Defendant Geico because the relevant provision of the policy covers only an "owned auto" or "non-owned auto," and the rental vehicle was neither of those things; (2) the incident is not covered by Defendant Lovette's insurance policy with Defendant Geico because the relevant provision of the policy covers only accidents, and the incident was caused not by an accident but by an intentional act; (3) the incident is not covered by Defendant Lovette's insurance policy with Defendant Geico because the relevant provision of the policy covers only "any other person using the auto with your (the named insured) permission" provided that "[t]he actual use . . . [was] within the scope of that permission," and Defendant Myles' use of the rental vehicle was outside the scope of Defendant Lovette's permission in that it was part of the commission of a crime; and (4) as a matter of law, Defendant Geico was not provided with timely notice of the incident, the loss, and the claim. (*Id.*)

On January 15, 2008, the Hertz Defendants moved for summary judgment essentially on the ground that Defendant Myles' use of the rental vehicle was not covered by its insurance policy with Defendant Lovette under the circumstances. (Dkt. No. 40.) More specifically, the Hertz Defendants assert three arguments in support of their motion: (1) the rental agreement was violated because Defendant Myles was an unauthorized operator, within the meaning of the rental agreement; (2) even if Defendant Myles was an authorized operator within the meaning of the rental agreement, the rental agreement was violated because Defendant Myles engaged in reckless conduct (a fact that Defendant Myles is collaterally estopped from denying) and conduct that was properly charged as a crime, within the meaning of the rental agreement, which was clear and unambiguous; and (3) Plaintiff's claim under Vehicle and Traffic Law Section 388 is barred by the Graves Amendment to the Transportation Equity Act of 2005, 49 U.S.C. §

30106(a), which preempts Section 388. (*Id*.)

On March 11, 2008, Plaintiff moved for summary judgment. (Dkt. No. 56.) In support of its motion, Plaintiff asserts two alternative arguments: (1) the incident is not covered by Defendant Goodeve's insurance policy with Plaintiff because the relevant provision of the policy covers only accidents, and the incident was caused not by an accident but by an intentional act; and (2) as a matter of law, Plaintiff was not provided with timely notice of the incident, the loss, and the claim. (*Id.*)

Each of the motions has been fully briefed. It is worth adding only that, on April 8, 2009, Defendant Lovette filed, for the Court's "review and consideration," a Decision and Order issued by Justice James P. Murphy on March 11, 2009, and April 3, 2009, in the action of *Goodeve v. Hertz Corp.*, Index No. 2007-3458, RJI No. 33-08-2503 (N.Y.S. Sup. Ct., Onondaga County). (Dkt. No. 71.)[2] Subsequently, the parties were permitted to file letter briefs in this action regarding how Justice Murphy's Decision and Order impacts the pending motions for summary judgment in this action, if at all. (Dkt. Nos. 72-78.)

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

For the sake of brevity, and because the parties to this action have demonstrated an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*,

---

[2]    Generally, in his Decision and Order, Justice Murphy granted Erica Lovette's motion for summary judgment dismissing the Goodeves' claims against her on the ground that Leonard Myles' previous guilty plea to an intentional assault collaterally estops Officer Goodeve from arguing that Myles' acts were negligent rather than intentional.

04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### III.   ANALYSIS

#### A.   Travelers Defendants' Motion for Summary Judgment

Based on the current record, the Court rejects the Travelers Defendants' argument that the incident in question is not covered by Defendant Myles' insurance policy with the Travelers Defendants because the relevant provision of the policy covers only accidents, and the incident was caused not by an accident but by an intentional act.

In making their argument, the Travelers Defendants focus on whether Defendant Myles is collaterally estopped (by his criminal plea of intentional assault) from asserting that the incident in question was an accident rather than an intentional act. The Court finds this issue to be immaterial to the Travelers Defendants' motion for summary judgment. In actuality, the Travelers Defendants' involvement in this action turns not on an assertion by Defendant Myles that the incident was an accident, but on the assertion by Defendant *Goodeve* that the incident was an accident. Defendant Goodeve is the injured party on whose behalf requests for coverage were submitted to each of the insurers in this action. It is these requests for coverage that were the impetus of, and that are the crux of, this action, which seeks a judgment declaring the obligations of the named insurance companies regarding Defendant Goodeve's personal injuries.[3]

Furthermore, based on the current record, there is at least a genuine issue of material fact

---

[3]   The Court notes that it cannot find, in the pleadings in this action, any cross claims, counter claims or affirmative defenses asserted by Defendant Myles expressly stating that the incident was an accident. (*See generally* Dkt. No. 29 [Answer of Myles].)

as to whether Defendant Goodeve had a full and fair opportunity to litigate the issue of Defendant Myles' intent at Defendant Myles' criminal proceeding. He was not a party to that proceeding, nor was he in privity with such a party,[4] nor did he testify or appear by counsel during Defendant Myles' plea allocution. In short, Defendant Goodeve appears to have had an insufficient opportunity to contest Defendant Myles' plea of intentional assault.

Such a lack of opportunity by nonparties to criminal proceedings appears to be widely recognized across the country. *See, e.g., Wolverine Mut. Ins. v. Vance ex rel. Tinsley,* 325 F.3d 939, 942 (7th Cir. 2003) ("Because a tort victim does not have an opportunity to litigate on his own behalf in a criminal proceeding, Indiana courts have held that a tort victim is not collaterally estopped from relitigating the insured's intent despite a verdict or a guilty plea in a criminal trial.") [citations omitted]; *Wilson v. Attaway*, 757 F.2d 1227, 1237 (11th Cir. 1985) (nonparty to criminal proceeding not bound by decision in that proceeding because she did not have full and fair opportunity to litigate that proceeding); *Phillips v. Franco*, 612 F. Supp.2d 1190, 1195-97 (D. N.M. 2009) (nonparty to criminal proceeding not bound by decision in that proceeding because she did not have full and fair opportunity to litigate that proceeding); *In re Bou Carro*, 210 B.R. 13, 16 (Bankr. D. Puerto Rico 1997) ("The situation is different as to Mrs. Diaz

---

[4] "For a non-party . . . to be in privity with a party to a criminal action, . . . the non-party must substantially control or be represented by the party . . . ." *Olson v. Fajardo-Velez*, 419 F. Supp.2d 32, 44 (D. Puerto Rico 2006) (citations omitted); *see also Jackson v. Ramundo*, 95-CV-5832, 1997 WL 678167, at *4 (S.D.N.Y. Oct 30, 1997) (finding that, in a civil action against a police officer stemming from incidents related to plaintiff's arrest, "the use of collateral estoppel to preclude the defendant from disputing whether the alleged seizure of the plaintiff's boots violated his Fourth Amendment rights is inappropriate . . . [because] the defendant . . . was not a party in the criminal case and was not in privity with the State of New York on whose behalf the criminal case was brought[, and] the defendant had no control over how the criminal case was handled and no ability to appeal the state court's decision.").

Llavona, Mr. Bou Carro's wife and conjugal partner in the joint petition. Mrs. Diaz Llavona was not indicted, nor did she plead guilty. Therefore, she is not collaterally estopped from litigating the dischargeability issue on her own behalf.").[5]

Moreover, the Court notes that, setting aside the issue of whether Defendant Goodeve had a sufficient opportunity to contest Defendant Myles' plea of intentional assault, the record contains at least some evidence that even Defendant Myles did not have an *incentive* to fully litigate the issue of his intent in the criminal proceeding under the circumstances.[6] *See Allstate Ins. Co. v. Kovar*, 842 N.E.2d 1268, 1277 (Ill. App. 2 Dist. 2006) ("[I]t does not appear that

---

[5] *See also Gentile v. Bauder,* 718 So.2d 781, 783 (Fla. 1998) (nonparty to criminal proceeding not bound by decision in that proceeding because he did not have full and fair opportunity to litigate that proceeding); *Economy Fire and Cas. Co. v. Haste*, 824 S.W.2d 41, 44 (Mo. App. 1991) ("Economy asserts . . . that appellants are collaterally estopped from litigating the issue of Berdella's expected or intended consequences against the victims. The appellants were not parties to or in privity with a party to the criminal actions against Berdella. Accordingly, the doctrine of collateral estoppel does not bar appellants from litigating Berdella's expected or intended consequence from his acts against the victims."); *State Farm Fire & Casualty Co. v. Jenkins*, 382 N.W.2d 796, 798, n.2 (Mich. App. 1985) ("Jenkins argues that Grasfeder's guilty plea should not collaterally estop her from litigating the issue of whether Grasfeder intended or expected the injury. We agree with Jenkins that because she was not a party in the criminal action, the doctrine of collateral estoppel does not bar litigation of the issue."); *cf. Hartford Ins. Co. of Midwest v. Estate of Tollardo*, 409 F. Supp.2d 1301, 1309 (D. N.M. 2005) ("Defendants argue that the Court should accept Perea's guilty plea to first degree murder as evidence that he intended, throughout the night, to kill the victims. . . . Collateral estoppel, however, requires that the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication. . . . Dairyland was clearly not a party to the prosecution of Perea, nor was it in privity with Perea or the United States. The Court will thus not apply collateral estoppel to this case.").

[6] More specifically, in his response papers, Defendant Myles admits that he pled guilty solely to avoid a life sentence as a predicate non-violent felon on a more serious charge. (Dkt. No. 52, Part 3, at 22-25 [attaching pages "8" through "11" of Memo. of Law in Support of Myles' Consolidated Response].) This admission has at least some support in the record. (*See, e.g.*, Dkt. No. 52, Part 7, at 76-78 [attaching pages "75" through "77" of Myles Depo. Tr.]; Dkt. No. 52, Part 21 [attaching transcript of plea allocution]).

Daniel had a strong incentive to litigate the battery issue in the earlier proceeding. Daniel himself said that he pleaded guilty only because doing so gave him the opportunity for a light sentence and a clean record.") (relying on *Talarico v. Dunlap*, 685 N.E.2d 325, 329-32 [Ill. 1997]). The lack of such an incentive constitutes a circumstance that so undermines confidence in the original determination as to render the application of the doctrine of collateral estoppel impermissibly unfair. *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999).

Finally, with regard to the effect of Justice Murphy's Decision and Order of March 11, 2009, and April 3, 2009, in the action of *Goodeve v. Hertz Corp.*, Index No. 2007-3458, RJI No. 33-08-2503 (N.Y.S. Sup. Ct., Onondaga County), the Court makes four observations. First, it does not appear that the parties briefed Justice Murphy on the issue of whether Defendant Goodeve had a full and fair opportunity to litigate the issue of Defendant Myles' intent at Defendant Myles' criminal proceeding.[7] The Court reaches this conclusion because the parties did not brief that issue in the current proceeding, and because Justice Murphy did not address that issue in his Decision of March 11, 2009. *See Goodeve v. Hertz Corp.*, Index No. 2007-3458, RJI No. 33-08-2503, Decision at 3-5, 7-10 (N.Y.S. Sup. Ct., Onondaga County filed March 11, 2009). Second, a notice of appeal from Justice Murphy's Decision and Order has been filed by

---

[7] *See Montana v. United States*, 440 U.S. 147, 164 n.11 (1979) ("Redetermination of issues [in federal court] is warranted if there is reason to doubt the . . . extensiveness . . . of procedures followed in prior litigation [in state court].") (citations omitted); *see, e.g., Kolb v. County of Suffolk*, 79-CV-1065, 1986 U.S. Dist. LEXIS 30967, at *20-21 (S.D.N.Y. July 22, 1986) (redetermination by federal court of issue decided by state court was not barred by collateral estoppel because of insufficiency of evidence and testimony presented in state court proceeding).

Sean Goodeve.[8]  Third, any preclusive effect of Justice Murphy's Decision and Order on the current proceeding would apply only to any claims by, or against, Defendant Myles in the current proceeding.  Fourth, there is at least some admissible record evidence before the Court that, during the incident in question, Defendant Myles did not intend to injure Defendant Goodeve, but merely panicked and attempted to flee the scene.[9]  Under these narrow circumstances, the Court respectfully declines to give the relevant portion of Justice Murphy's Decision and Order preclusive effect in the current action.

As a result, Defendant Goodeve's assertion of negligence by Defendant Myles is not estopped in this proceeding by Defendant Myles' plea in the criminal proceeding, and the Travelers Defendant may not (as a matter of law) escape liability for denying coverage of the incident in question on that ground.

Turning to the Travelers Defendants' alternative argument that it cannot be liable for Defendant Goodeve's injuries because Defendant Myles failed, as a matter of law, to provide the Travelers Defendants with timely notice of the incident, the Court rejects that argument.  As an initial matter, the Court finds that at least some admissible record evidence exists from which a rational fact finder could conclude that Defendant Myles' failure to provide Travelers

---

[8]   *See* Restatement (Second) Judgments § 13(f),(g) (1982) ("The pendency of . . . an appeal from a judgment[] is relevant in deciding whether the question of preclusion should be presently decided in the second action. . . .  [T]hat the decision was . . . in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purposes of [issue] preclusion.").

[9]   (*See, e.g.*, Dkt. No. 52, Part 7, at 15, 69-72, 83-85 [attaching pages "14," "68" through "71," and "82" through "84," of Myles Depo. Tr.]; Dkt. No. 52, Part 9 [attaching police report]; Dkt. No. 53, Part 3, at 8 [attaching page "7" of Goodeve Depo. Tr.]; Dkt. No. 64, Part 3, at ¶ 5 [Goodeve Affid.].)

Defendants with timely notice is excusable under the circumstances. More specifically, Defendant Myles' excuse for his failure to provide the Travelers Defendants with notice of the incident before July 26, 2006, was that he was incarcerated at the time, and his only means of communication was by collect telephone call or by mail. (Dkt. No. 52, Part 7, at 62-63 [attaching pages "61" and "62" of Myles Depo. Tr.].) Generally, whether such an excuse is reasonable is a question of fact for the factfinder to decide.[10]

In any event, even if the Court were to find that Defendant Myles' excuse was not reasonable as a matter of law, the Court would find at least some admissible record evidence from which a rational factfinder could conclude that Defendant Goodeve provided the Travelers Defendants with timely notice under the circumstances.[11]

---

[10] *See U.S. Liab. Ins. Co. v. Winchester Fine Arts Servs., Inc.*, 337 F. Supp.2d 435, 443 (S.D.N.Y. 2004) (explaining that, under New York law, when insured proffers excuse for delay in notice to insurer regarding potential claim, issue of whether delay is reasonable under the circumstances will generally be determined by factfinder) (citation omitted); *Mount Vernon Fire Ins. Co. v. Abesol Realty Corp.*, 288 F. Supp.2d 302, 311 (E.D.N.Y. 2003) ("Whether or not an insured's failure to provide timely notice to an insurer is reasonable under the circumstances is ordinarily a question of fact precluding summary judgment."), *accord, 105 St. Assoc., LLC v. Greenwich Ins. Co.*, 507 F. Supp.2d 377, 382-83 (S.D.N.Y. 2007); *Lauritano v. American Fid. Fire Ins. Co.*, 3 A.D.2d 564,557 (N.Y. App. Div., 1st Dept. 1957) ("The passage of time does not of itself make delay unreasonable[, as] [p]romptness is relative and measured by circumstance"), *aff'd,* 4 N.Y. 1028 (N.Y. 1958), *accord, Allstate Ins. Co. v. Flaumenbaum*, 62 Misc.2d 32, 37 (N.Y. Sup. Ct. 1970) (holding that notice given 496 days after accident was given as soon as practicable where driver of vehicle in which passenger was injured was uncooperative and injured party's attorney was unable to immediately determine existence and identity of insurer, despite diligent efforts).

[11] "When . . . the insured fails to provide timely notice and does not have an adequate excuse, the injured party may provide the required notice and thereby avoid being charged with the delay of the insured." *Colon v. U.S. Liab. Ins. Group*, 06-CV-5422, 2009 WL 2413646, at *3 (E.D.N.Y. Aug. 6, 2009) (citations omitted). With that said, "[a]lthough the injured party is not held to the same standard as the insured, . . . the injured party has the burden of proving that he or his counsel acted diligently in attempting to ascertain the identity of the insurer and, thereafter, expeditiously notified the insurer." *Colon*, 2009 WL 2413646, at *3

For example, for much of the year following the incident in question, Defendant Goodeve was undergoing surgery, rehabilitation, physical therapy, and/or hospitalization for severe leg pain or a fever of an unknown origin.  (Dkt. No. 53, Part 3, at 10-27 [attaching pages "9" through "26" of Goodeve Depo. Tr.]; Dkt. No. 64, Part 3, at ¶¶ 6-8, 11 [Goodeve Affid.].)  After Defendant Goodeve retained counsel approximately a year after the incident, that counsel encountered difficulty in determining Defendant Myles' insurance carrier, and was unable to do so until July 26, 2006.  (Dkt. No. 64, Part 3, at ¶¶ 11-13 [Goodeve Affid.]; Dkt. No. 64, Part 1, at ¶¶ 4-6, 13 & Ex. A [Affid. of Def. Myles' Attorney].)

For all of these reasons, the Court denies the Travelers Defendants' motion for summary judgment.

### B.      Defendant Geico's Motion for Summary Judgment

The Court rejects Defendant Geico's argument that the incident is not covered by Defendant Lovette's insurance policy with Defendant Geico because the relevant provision of the policy covers only an "owned auto" or "non-owned auto," and the rental vehicle was neither of those things.  By letter dated May 10, 2006, Defendant Geico informed Defendant Myles that, among other things, the rental vehicle "meets the definition of a temporary substitute auto," and a "temporary substitute auto" is considered an "owned auto" for purposes of Defendant Geico's policy.  (Dkt. No. 52, Part 19, at 2-3.)  In addition, in her deposition, Defendant Lovette testified that she rented the vehicle because her car was not working properly.  (Dkt. No. 52, Part 16, at

---

(internal quotation marks and citations omitted); *Yun Lin v. Allcity Ins. Co.*, 128 F. Supp.2d 166, 170 n.3 (S.D.N.Y. 1999) (noting that, under New York law, "[t]he standard for determining timeliness of notice to liability insurer of occurrence is more lenient when notice is given by injured party than when it is given by insured").

10-12, 17, 26 [attaching pages "9," "10," "11," "16" and "25" of Lovette Dep. Tr.].) Thus, a genuine issue of material fact exists regarding whether the rental vehicle was an "owned auto."

Turning to Defendant Geico's alternative argument that the incident is not covered by Defendant Lovette's insurance policy with Defendant Geico because the relevant provision of the policy covers only accidents, and the incident was caused not by an accident but by an intentional act, the Court rejects that argument for the same reasons that it rejected the Travelers Defendants' similar argument, as stated above in Part III.A. of this Decision and Order.

Turning to Defendant Geico's alternative argument that, as a matter of law, Defendant Geico was not provided with timely notice of the incident, the Court rejects this argument for the reasons set forth in Part III.A. of this Decision and Order–i.e., that a genuine issue of material fact exists regarding whether the notice that Defendant Goodeve provided was timely under the circumstances. The Court notes that Defendant Goodeve provided notice to Defendant Geico on March 17, 2006. (*See* Dkt. No. 39, Part 10, at ¶ 12 [Def. Geico's 7.1 Stmt, asserting referenced fact and supporting assertion with accurate record citation].)

Finally, turning to Defendant Geico's alternative argument that the incident is not covered by Defendant Lovette's insurance policy with Defendant Geico because the relevant provision of the policy covers only "any other person using the auto with your (the named insured) permission" provided that "[t]he actual use . . . [was] within the scope of that permission," and Defendant Myles' use of the rental vehicle was outside the scope of Defendant Lovette's permission in that it was part of the commission of a crime, the Court accepts this argument.

In her deposition, Defendant Lovette testified as follows: (1) "[y]ou could say" that, on

the evening of February 11, 2005, she rented the vehicle in question, for both herself and Defendant Myles to use; (2) on the morning of February 12, 2005, after Defendant Myles had stayed the night at Defendant Lovette's apartment, she "was aware" that he left her apartment with the rental vehicle; and (3) at the time, he did not ask to use the vehicle but "it was just assumed that he could use [vehicle]." (Dkt. No. 52, Part 16, at 10-12 [attaching pages "9" through "11" of Lovette Dep. Tr.].)[12]

However, Defendant Lovette also testified as follows: (1) she did not inform Hertz of the fact that "[y]ou could say" she had rented the vehicle for both herself and Defendant Myles to use; (2) she did not recall filling out Hertz's "additional authorized operator form"; (3) when she and Defendant Myles left Hertz on the evening of February 11, 2004, she drove the rental vehicle because she was the one who had rented the car; (4) on the morning of February 12, 2004, she "felt ill and stayed home," and "mentioned to [Defendant] Myles that [she] could use some cold medication"; (5) "[i]t was [her] assumption that he was [using the vehicle] to get medicine for [her] . . . because she "was sick that morning"; (6) there were numerous stores near Defendant Lovette's apartment, to which Defendant Myles could drive in order to obtain cold medication; (7) when Defendant Myles left Defendant Lovette's apartment on the morning of February 12, 2004, "[h]e told [her] he was going to be right back"; (8) Defendant Myles did not come back to Defendant Lovette's apartment that day; (9) after the accident on the evening of February 12, 2004, Defendant Myles apologized to Defendant Lovette for what had happened; and (10) before the accident on February 12, 2004, Defendant Lovette (who was the dean of

---

[12] The Court notes that none of the parties have adduced admissible record evidence to the contrary.

students at a renowned elementary-middle school) did not know Defendant Myles was either a drug user or drug seller. (Dkt. No. 52, Part 16, at 9, 11, 14, 15, 12, 21-22, 27, 30-32, 43, 52 [attaching pages "8," "10," "11," "13," "14," "20," "21," "26," "29," "30," "31," "43," and "51" of Lovette Dep. Tr.].)

In his deposition, Defendant Myles testified that, on February 12, 2004, he did not use the rental vehicle in question to obtain cold medication for Defendant Lovette. (Dkt. No. 52, Part 7, at 86 [attaching page "85" of Myles Depo. Tr.].) Rather, he testified that he used the rental vehicle in question to do the following: (1) visit a friend on South Salina Street; (2) go to a clothing store on South Salina Street; (3) go to a residence on LeMoyne Avenue in order to talk to a man "about something"; (4) go to a Hess gas station on Hiawatha Boulevard in order to pick up $100 owed to him because of a drug sale the day before; (5) pick up a man on Lodi Street to drive him to get an adapter for his cell phone on North State Street; and (6) while on North State Street, attempt to evade an arrest due to the presence of crack cocaine in the vehicle (and the fact that he was on parole). (Dkt. No. 52, Part 7, at 44, 51-59, 83-85 [attaching pages "43," "50" through "58," and "82" through "84" of Myles Depo. Tr.].)

Based on these undisputed material facts, the Court finds that no rational fact-finder could conclude that the scope of Defendant Myles' permitted use of the vehicle in question on the morning of February 12, 2004, encompassed his actual use of the vehicle to (1) transport crack cocaine, (2) pick up money owed from a previous drug sale, and/or (3) attempt to evade an arrest due to the presence of crack cocaine in the vehicle.

For these reasons, the Court grants Defendant Geico's motion for summary judgment.

**C.     Hertz Defendants' Motion for Summary Judgment**

The Court need not, and does not, evaluate the Hertz Defendants' argument that the rental agreement was violated because Defendant Myles was an unauthorized operator, within the meaning of the rental agreement. This is because the Court accepts the Hertz Defendants' alternative argument that, even if Defendant Myles was an authorized operator within the meaning of the rental agreement,[13] the rental agreement was violated because Defendant Myles engaged in conduct that was properly charged as a crime, within the meaning of the rental agreement, which was clear and unambiguous.[14] The Court reaches this conclusion based on the uncontroverted record evidence that Defendant Myles (1) possessed, and was transporting, crack cocaine in the rental vehicle, which he intended to sell, (2) used the rental vehicle to drive to a residence to pick up money owed to him from a previous drug transaction, and (3) used the vehicle in an attempt to flee from the scene of the stop in order to avoid his lawful arrest. (Dkt. No. 39, Part 8, at 17-24, 32-34 [attaching pages "33" through "37," pages "41" through 43," and pages "82" through "84" of Myles Dep. Tr.].)

Turning to the Hertz Defendants' argument that Plaintiff's claim under Vehicle and Traffic Law Section 388 is barred by the Graves Amendment to the Transportation Equity Act of 2005, 49 U.S.C. § 30106(a), which preempts Section 388, the Court accepts that argument as well. As the Eastern District of New York recently explained, the Graves Amendment "clearly

---

[13] The Court notes that, if Defendant Myles were not an "authorized operator" of the vehicle, his very act of driving the vehicle would constitute a violation of the Rental Agreement.

[14] The Court notes that it rejects the Hertz Defendants' alternative argument that, even if Defendant Myles was an authorized operator within the meaning of the rental agreement, the rental agreement was violated because Defendant Myles engaged in reckless conduct (a fact that Defendant Myles is collaterally estopped from denying). The Court rejects this argument for the same reasons that it rejected the Travelers Defendants' similar argument, as stated above in Part III.A. of this Decision and Order.

intended to preempt [New York's Vehicle and Traffic Law section 388's] . . . policy [of vicarious liability] as a matter of federal law and bar recovery against car rental and leasing companies based on vicarious liability." *Green v. Toyota Motor CreditCorp*, 605 F. Supp.2d 430, 434 (E.D.N.Y. 2009) (finding the Graves Amendment constitutional).[15]

For all these reasons, the Court grants the Hertz Defendants' motion for summary judgment.

### D.       Plaintiff's Motion for Summary Judgment

The Court rejects Plaintiff's argument that the incident is not covered by Defendant Goodeve's insurance policy with Plaintiff because the relevant provision of the policy covers only accidents, and the incident was caused not by an accident but by an intentional act. The Court reaches this conclusion for the same reasons that it rejected the Travelers Defendants' similar argument, as stated above in Part III.A. of this Decision and Order.

---

[15]       *See also Rein v. CAB East LLC,* 08-CV-2899, 2009 WL 1748905, at *3 (S.D.N.Y. Jun 22, 2009) ("The Graves Amendment expressly preempts the vicarious liability provisions of § 388 for claims commenced after August 10, 2005, as numerous courts have held.") (citing cases); *Luperon v. North Jersey Truck Center, Inc.*, 07-CV-9630, 2009 WL 1726340, at *5 (S.D.N.Y. Jun 19, 2009) ("[T]he Graves Amendment specifically exempts lessors from liability in a case like the one at bar. As a consequence of the language in the Graves Amendment, it overrides New York V.T.L. § 388 insofar as it imposed liability on lessors, . . . ."); *Pacho v. Enterprise Rent-A-Car Co.,* 572 F. Supp.2d 341, 350 (S.D.N.Y. 2008) ("[T]his amendment had the effect of preempting any state law that imposed vicarious liability to the owner or lessor of a vehicle without regard to fault."); *Flagler v. Budget Rent A Car System, Inc.*, 538 F. Supp.2d 557, 558 (E.D.N.Y. 2008) ("There is no question but that the Graves Amendment preempts state laws that impose vicarious liability on businesses that rent or lease vehicles.") (citation omitted); *Berkan v. Penske Truck Leasing Canada, Inc.*, 535 F. Supp.2d 341, 345-46 (W.D.N.Y. 2008) ("I find that the Graves Amendment represents a proper exercise of Congressional authority under the Commerce Clause. Accordingly, plaintiffs' claims against Penske are barred by operation of the *346 Graves Amendment . . . ."); *Merchants Ins. Group v. Mitsubishi Motor Credit Assoc.*, 525 F. Supp.2d 309, 312-13 (E.D.N.Y. 2007) ("Courts have consistently held that the Graves Amendment prohibits states from imposing vicarious liability on owner-lessors such as defendants where the lessor is not negligent.") (collecting cases).

Turning to Plaintiff's alternative argument that, as a matter of law, Plaintiff was not provided with timely notice of the incident, the Court rejects this argument. Defendant Goodeve's attorney swears in her affidavit that she sent a letter to Plaintiff within five days of her receiving a letter from Defendant Hertz, which denied Defendant Goodeve's claim. (Dkt. No. 64, Part 1, at 3 [Affid. in Opp. to Plf.'s Motion for Summ. Judg.].) Defendant Goodeve's attorney further swears that, as soon as she was retained, "[e]fforts were immediately undertaken to investigate all available sources of insurance." (*Id*. at 4-5.) Finally, Defendant Goodeve's attorney swears that, initially, there was "no clear evidence of an uninsured motorist claim." (*Id*. at 4.) Based on this record evidence, at least a genuine issue of material fact exists regarding whether Defendant Goodeve's notification to Plaintiff was provided "as soon as practicable." *Rekemeyer v. State Farm Mut. Auto. Ins. Co.*, 777 N.Y.S.2d 551, 552-53 (N.Y. App. Div., 3d Dept. 2004) ("[T]here may be circumstances that will excuse or explain . . . [notifying an insurer more than one year after the accident], and the burden is . . . [on] plaintiff to provide admissible evidence establishing such excuse or, at the very least, sufficient to raise a question of fact as to the reasonableness of the delay."); *Dixon v. N.Y. Cent. Mut. Fire Ins. Co.*, 695 N.Y.S.2d 826, 828 (N.Y. App. Div., 4th Dept. 1999) (explaining that whether insureds had provided timely notice of their claim for supplemental uninsured motorist benefits turned solely on their diligence and therefore on facts within their knowledge, not on when the insurer had actual notice of the accident).

For all these reasons, the Court denies Plaintiff's motion for summary judgment.

### E.     Travelers Defendants' Motion for Sanctions

The Court denies as without cause the Travelers Defendants' motion for sanctions against

Plaintiff for bringing this action seeking a declaratory judgment. Simply stated, the action is not frivolous because genuine issues of material fact exist in the action, including a genuine issue of material fact regarding whether Defendant Myles' actions were intentional.

**ACCORDINGLY**, it is

**ORDERED** that the Travelers Defendants' motion for summary judgment (Dkt. Nos. 34-35) is **DENIED**; and it is further

**ORDERED** that Defendant Geico's motion for summary judgment (Dkt. No. 39) is **GRANTED**; and it is further

**ORDERED** that the Hertz Defendants' motion for summary judgment (Dkt. No. 40) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 56) is **DENIED**; and it is further

**ORDERED** that the Travelers Defendants' motion for sanctions (Dkt No. 48) is **DENIED**; and it is further

**ORDERED** that counsel are directed to appear at a pretrial conference on **DECEMBER 7, 2009** at 10:00 a.m. in chambers in Syracuse, New York with settlement authority, and in event that the case does not settle, a bench trial will be scheduled at that time.

Dated: November 17, 2009
    Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge